In re Anonymous No. 9 D.B. 77

Disciplinary Board Docket no. 9 D.B. 77.

FOLEY, *Member*, April 5, 1978—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF THE PROCEEDINGS

On February 28, 1977, office of disciplinary counsel filed a petition for discipline with respect to respondent. An answer not having been filed within the prescribed time, the petition was referred to hearing committee [   ], consisting of [   ], Esq., Chairman; [   ], Jr., Esq. and [   ], Esq. On June 29, 1977, a pre-hearing conference was held and as a result of which on July 20, 1977, respondent filed an answer to the petition for discipline admitting most of the allegations in the three-count petition for discipline. On July 26, 1977, a hearing was held at which time stipulations were entered

into and exhibits were examined and received into evidence. The only witness who testified was respondent himself.

After the testimony was closed, the hearing committee reported respondent had violated the following disciplinary rules:

a. Disciplinary Rule 1-102(A)(3)—dealing with engaging in illegal conduct involving moral turpitude (three counts);

b. Disciplinary Rule 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit or misrepresentation (three counts);

c. Disciplinary Rule 1-102(A)(5)—dealing with conduct prejudicial to the administration of justice (two counts);

d. Disciplinary Rule 1-102(A)(6)—dealing with other conduct adversely reflecting upon his fitness to practice law (three counts);

e. Disciplinary Rule 6-101(A)(3)—dealing with neglect of a legal matter entrusted to him (one count);

f. Disciplinary Rule 9-102(A)—dealing with preserving the identity of funds of a client (three counts);

g. Disciplinary Rule 9-102(B)(1)—dealing with prompt notification to the client of receipt by the lawyer of the client's funds, securities or other properties (three counts);

h. Disciplinary Rule 9-102(B)(4)—dealing with prompt payment or delivery to the client of funds or other properties in the possession of the lawyer which the client is entitled to receive (three counts).

The hearing committee then received evidence as to the type of discipline to be imposed, which

consisted of petitioner's exhibit 3, it being the relevant portions of the file in 26 D.B. 75 in which respondent received a private reprimand on April 2, 1976. That record cited respondent's fine record as a lawyer for 25 years as a reason for not recommending public discipline. No other evidence was presented by way of mitigation nor was any recommendation made by the office of disciplinary counsel as to the discipline to be imposed upon respondent. Subsequently, the hearing committee submitted its report recommending disbarment of respondent.

## II.  FINDINGS AND DISCUSSION

The report of the hearing committee carefully analyzed the admitted facts with respect to each of the three charges contained in the petition. We adopt their findings of fact as stated, which we have summarized as follows, but disagree with their recommendation as to discipline to be imposed.

## [A] MATTER

Respondent was retained to represent Mrs. [A] of [   ], Pennsylvania to sue an insurance agent for negligence in allowing her fire insurance policy to expire or to be cancelled prior to the date of a fire which destroyed her home. In February of 1974, respondent informed attorney for the defendant-agent that Mrs. [A] had agreed to accept $1,500 to settle said claim. The action was discontinued by respondent who deposited the check made payable to himself and his client into his own personal account. The representations and endorsements were

made without Mrs. [A's] knowledge or consent. Subsequently, in February of 1977, after an initial investigation by the office of the disciplinary board, respondent made payment to Mrs. [A] of a total of $954.50, which purported to be the amount due her less attorney's fees and costs incurred by respondent.

## [B] MATTER

Respondent was retained to represent Mr. and Mrs. [B] as a result of an injury to Mrs. [B] in October of 1969. Suit was filed against various defendants and in May of 1973, without consulting or advising his clients, he negotiated a settlement in the amount of $1,500 and delivered to counsel for defendants a release purporting to bear the signatures of his clients. Thereafter, he received settlement checks totalling $1,500, which he deposited in his personal account and discontinued the suit of record. In the spring of 1974, upon a chance meeting, respondent informed Mr. [B] that the suit was still pending. In October of 1975, Mr. and Mrs. [B] retained other counsel to check on the status of the case, who learned that respondent previously settled the case without their authority and informed his clients. Thereafter, in November of 1975, respondent settled the claim of Mr. and Mrs. [B] against him for the sum of $6,500 as evidenced by a check in the amount of $2,000 and a judgment note in the amount of $4,500, which latter amount was paid in full on May 3, 1976. At this time, Mr. and Mrs. [B] executed a release in favor of respondent of all liability arising out of the cause of action on their behalf.

## [C] INSURANCE CO. MATTER

This charge involved the failure on the part of respondent to remit to [C] insurance company an amount of a subrogation claim of $127.19, which claim respondent had in writing acknowledged and which moneys had been converted and put to his own use following the settlement of the claim of his clients for the amount of $2,000 in January of 1973.

There is no doubt that respondent's conduct, which he freely admitted, constituted a grave violation of the disciplinary rules. It is a perplexing problem as to what motivated a practitioner of over 25 years to engage in conduct involving forgery, deceit, deception and conversion of funds for a relatively small amount of money in the three cases involved in this petition and in the one to no. 26 D.B. 75 involving a settlement of $1,000, in January of 1971. In that case, respondent was found guilty of transgressing Rule D.R. 9-102(A) dealing with preserving the identity of funds of a client, D.R. 9-102(B)(1) dealing with prompt notification to the client of receipt by the lawyer of the client's funds, securities or other properties, and D.R. 9-102(B)(4) dealing with prompt payment or delivery to the client of funds or other properties in the possession of the lawyer, which the client is entitled to receive.

The board agrees with the hearing committee that severe punishment is merited by respondent, but not to the extent of disbarment. At the time the petition for discipline to no. 26 D.B. 75 had been filed, the acts of deceit, forgery and conversion in the instant matter had already been committed and by the time the private reprimand was issued on April 2, 1976, respondent made restitution of all sums of moneys due and owing to his clients

aforementioned. Moreover, we must consider the totality of respondent's conduct within the same period of time in determing what is the proper punishment to be meted out to respondent. See Office of Disciplinary Counsel v. [ ], no. 65 D.B. 75.

"As the Disciplinary Rules should be uniformly applied to all lawyers regardless of the nature of their professional activities, so should discipline be uniformly administered. 'The severity of judgment against one found guilty of violating a disciplinary rule should be determined by the character of the offense and the attendant circumstances.' Code for Professional Responsibility (Preliminary Statement)" Office of Disciplinary Counsel v. [ ], no. 30 D.B. 75 and no. 57 D.B. 75, at page 10. See also Office of Disciplinary Counsel v. [ ], no. 7 D.B. 77.

In reviewing the facts of this case, it is clear that the severity of respondent's conduct does not arise to the level of the conduct of the respondent in Office of Disciplinary Counsel v. [D], no. 57 D.B. 73 and no. 44 D.B. 75. In that case, [D] engaged in similar activity involving large sums of money over a period of 10 years, but in addition, he exhibited a complete and utter disregard for the hearing committee, contempt for the disciplinary process and "willfully and corruptly swore falsely to all of the material facts in the case." (At p. 6)

By the same manner, respondent's reputed conduct was more serious that that engaged in by [E] in Office of Disciplinary Counsel v. [E], no. 33 D.B. 75, who received a two-year suspension for similar conduct in a single instance, although, as pointed out in that report, the reason for the long suspension was the fact that [E] was not candid in his testimony before the hearing committee and did not rely on his law practice for a living.

## III. RECOMMENDATION

For the reasons set forth above, the board recommends to your honorable court that respondent, [ ], be suspended from the practice of law for a period of three years.

Messrs. Harrington, Anderson and Johnson did not participate in the adjudication.

### ORDER

EAGEN, *C.J.* — And now, May 8, 1978, the report and recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania, filed April 5, 1978, is accepted and it is ordered and decreed, that [respondent] be, and he is forthwith suspended from the bar of this court and all the courts under its supervisory jurisdiction for a period of three years and until further order of this court.

Mr. Justice Larsen would enter an order of disbarment.